STATE OF CONNECTICUT *v.* WILLIAM W. MULVEY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 1-33370

Argued February 15—decided May 26, 1965

*Sidney Vogel,* of Norwalk, for the appellant (defendant).

*Edward J. Capasse,* assistant prosecuting attorney, for the appellee (state).

Kosicki, J. Following a trial before a jury, the defendant was found guilty of the crime of evading responsibility in the operation of a motor vehicle, in violation of § 14-224 of the General Statutes, and has appealed. The defendant has assigned six errors, the first of which is directed toward a denial by the court of the defendant's motion to strike fourteen paragraphs from the finding; four of the claimed errors attack portions of the court's charge to the jury; and the final assignment alleges error in the court's failure to rule upon certain exceptions to the

court's charge. We shall dispose of the last assignment at the outset.

Soon after the court had concluded its instructions and the jury had retired, the presiding judge heard the defendant's statement and exceptions and then declared the noon recess, announcing that during the lunch hour he would consider two of the points raised by the defendant and make his decision known at the end of the recess. Seven minutes after the jury had reconvened, they signified that they had reached their verdict, and the court remarked, "I'll note your exceptions" and proceeded to the verdict. The defendant's claim appears to be that some ruling was needed by the court other than the mere noting of an exception. No request to charge had been filed. The purpose of the rule pertaining to exceptions to the charge (Practice Book § 249) "is to alert the court to any claims of error while there is still an opportunity for correction, thereby avoiding the economic waste and increased court congestion caused by unnecessary retrials." *Towhill* v. *Kane,* 147 Conn. 191, 193. Further instructions can then be given if the court, in its discretion, deems them necessary. *D'Addario* v. *American Automobile Ins. Co.,* 142 Conn. 251, 256. The action of the trial judge amounted to a refusal to instruct the jury further, and he did not abuse his discretion in refusing to do so. The exceptions taken by the defendant fully protected his right to pursue his claims of error on appeal, as he has done in his other assignments of error.

In his first assignment the defendant asserts error in the court's refusal to strike from the finding fourteen of the twenty-three paragraphs containing the state's offers of evidence and claims of proof. The reason stated is that, although the defendant had complied with the rules in filing a draft finding, the

state had neglected to file a counterfinding. In an appeal in a jury case in which a finding is necessary, our rules require that the appellant file with his appeal a request for a finding and a draft of his proposed finding thereto annexed. Practice Book § 996 & Form No. 820. Within ten days thereafter opposing counsel shall file a counterfinding in substantial conformity with Form No. 821. Practice Book § 997. The clerk then delivers the file to the trial judge, who thereupon makes his finding, which shall state "such of the requests to charge or exceptions to the charge as are pertinent, quote the charge or so much thereof as may be necessary to fully present the claimed error, and contain a statement of the facts relevant thereto which each of the parties offered evidence to prove and . . . [claims] to have proved. Such statement does not establish the existence of any of the facts stated therein but only that there was evidence tending to show their existence. It should not be detailed or voluminous but confined strictly to facts bearing upon the questions raised." Practice Book § 999.

The defendant has pointed to no authority on the proposition that failure of the state to file a counterfinding requires that the statement of the prosecution's claims of proof contained in the court's finding should be stricken. Under the rules for the Supreme Court of Errors, failure or refusal to file a counterfinding may be penalized by the trial court by the imposition of costs not to exceed $25. Practice Book § 615; Maltbie, Conn. App. Proc. § 150. No such penalty is provided for in the rules applicable to the Appellate Division of the Circuit Court. Where neither the appellant nor the appellee files a statement of what each offered evidence to prove and claims to have proved, the trial court should either require the parties to comply with the rules or refuse to make a finding, and in the latter case the

appeal may be dismissed because of the impossibility, on appeal, of passing upon either the rulings on evidence or the parts of the charge complained of. *Dixon* v. *Gallon,* 104 Conn. 740. And where the claims of proof of the appellee are not covered in the counterfinding, "[i]t is the right of the court, in a finding in a jury case, fairly to include all claims of proof material to the questions of law which a request for a finding made pursuant to the requirements of Practice Book . . . [§§ 629-631] has stated it is desired to have reviewed on the appeal. Maltbie, Conn. App. Proc. § 145. This right cannot be abridged or circumscribed by any shortcomings in the statements as to the claims of proof, whether they occur in the draft finding or in the counterfinding or in both. *Wilson* v. *M & M Transportation Co.,* 125 Conn. 36, 42 . . . ." *Goodman* v. *Norwalk Jewish Center, Inc.,* 145 Conn. 146, 149. We do not view with approval the neglect of the appellee to comply with the rules, thereby putting the inexcusable burden upon the trial judge of supplying relevant matter without the aid of a counterfinding. Better practice would indicate that appropriate action be taken in such cases before the file reaches the judge for the purpose of making the finding. The defendant's motion, however, to correct the finding by striking therefrom the paragraphs in the finding, for the reasons stated, is without merit. We have reviewed all of the evidence, which in all material respects reasonably supported the prosecution's claims of proof as narrated in the finding. See *Petroman* v. *Anderson,* 105 Conn. 366, 369; *State* v. *Whiteside,* 148 Conn. 208, 214, 215; *Szela* v. *Johnson Motor Lines, Inc.,* 145 Conn. 714, 719; *Raughtigan* v. *Norwich Nickel & Brass Co.,* 86 Conn. 281, 287, 125 Rec. & Briefs, back of p. 296.

The finding, for the purpose of testing the charge and the rulings on the evidence, may be stated

briefly. The state offered evidence to prove and claimed to have proved the following facts: On September 5, 1964, at about 7 o'clock in the evening, Lester H. Smith was operating a motor vehicle belonging to Robert W. Miller northerly on Smith Ridge Road, a public highway in New Canaan. With him as passengers were his brother Kenneth and the owner, Miller. Smith Ridge Road at the time and place of the occurrences in the case was a two-lane highway, one lane for northbound traffic and the other for southbound. A car immediately in front of the Miller car had signaled for a left turn to enter a driveway. The road was straight, and no other traffic was proceeding in either direction. It was daylight, the weather was clear, and the highway in good condition. Smith brought his car to almost a complete stop to permit the car in front to make its turn and gave a hand signal of his intention to stop. The defendant, operating his car in the same direction and at some distance behind the Miller car, without slackening his speed ran into the rear of the Miller car with a terrific impact, causing a loud crash, and inflicting considerable damage to the Miller car. In addition to the damage to the rear of the car, the violence of the collision caused the frame of the Miller car to bend and the right front fender to buckle. Because of the impact, the Miller car was impelled from the highway to a grassy plot off the shoulder. The defendant did not see the car turning into the driveway nor the Miller car in front of him. Miller, who was blind, was sitting in the middle of the front seat of his car and was injured as a result of the collision; his injuries required medical attention. The front of the defendant's car was substantially damaged. The operator of the Miller car and his brother approached the defendant, who was seated in his car, and had a few words with him. Within a very short time the defendant,

without identifying himself, sped away from the scene and Smith followed him at high speed to obtain the registration number, which he later reported to the police. Just prior to the accident, the defendant had spent considerable time at a restaurant in New Canaan, where he consumed three martinis. The defendant, who testified, admitted that he was knowingly involved in an accident, did not offer to render any assistance, did not give his name and address and operator's license and registration number to anyone at the scene of the accident, and did not call the police to report the accident.

The defendant offered evidence to prove and claimed to have proved the following: His car came to an immediate stop after contact with the Miller car. Smith came to the defendant's car while it was stopped and while the defendant remained seated in it. There was a discussion about settling. The defendant gave Smith his name and spelled it, and his address, and indicated that he could be reached by telephone. Neither Smith nor the defendant asked for or was shown the registration or license of the other. There was no claim of injury to person or property by anyone at the scene of the accident. The defendant did not observe any damage to the Miller car or to any person. Neither the person who had made the left turn nor anyone from the neighborhood was attracted to the scene of the collision. Both cars were operable immediately after the collision. No claim was made of the influence of alcoholic liquor upon any person at the scene of the collision.

The four remaining assignments of error are all directed to the court's charge to the jury. In the first of these (second assignment of error) the defendant claims error because the court failed to instruct the jury that among the elements of the

offense the state was required to prove was knowledge on the part of the defendant that damage to person or property was caused by the collision. The court read to the jury the applicable portion of § 14-224.[1] It then instructed the jury that, for conviction, the state was required to prove beyond a reasonable doubt that the defendant was knowingly involved in an accident, while he was operating one of the colliding cars, and that he failed to stop and render such assistance as might be needed to the person injured or to the owner of the injured or damaged property. The defendant admitted operation, the collision and that he remained seated in the car and did not do any of the specific things commanded by the statute. The charge of the court, coupled with the reading of the statute and tested by the claims of proof, was substantially correct. There was, to be sure, only a fleeting reference in the charge to the fact that the accident contemplated by the statute must be such as to cause damage to person or property. No claim, however, is made that the jury were misled, and no exception was taken to the charge for that reason. The error claimed is that the court did not instruct the jury that the state was required to prove not only knowledge of the collision by the defendant but also knowledge by him of the damage caused by it. Such knowledge is not an element within the terms of the statute. It is enough for the state to prove that the defendant was knowingly involved in an accident and that the acci-

---

[1] "Sec. 14-224. EVADING RESPONSIBILITY IN OPERATION OF MOTOR VEHICLES. RACING. (a) Each person operating a motor vehicle who is knowingly involved in an accident which causes injury, whether or not resulting in death, to any other person or injury or damage to property shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license and registration number to the person injured or to the owner of the injured or damaged property, or to any officer or witness to the death of any person or to the injury to person or injury or damage to property . . . ."

dent caused damage to person or property of another. *State* v. *Fournier,* 2 Conn. Cir. Ct. 588, 592; *State* v. *Herbst,* 2 Conn. Cir. Ct. 236, 238; *State* v. *Walsh,* 24 Conn. Sup. 374, 376, 1 Conn. Cir. Ct. 607, 609; *State* v. *LeTourneau,* 23 Conn. Sup. 420, 424, 1 Conn. Cir. Ct. 282, 285. To like effect is *State* v. *Humphrey,* 22 Conn. Sup. 317, 319, 1 Conn. Cir. Ct. 1, 3, though the conviction in that case was reversed for lack of evidence of damage to person or property. So far as the case of *State* v. *LaRiviere,* 22 Conn. Sup. 385, 389, 1 Conn. Cir. Ct. 47, 50, includes among the elements of the crime of evading responsibility "knowledge by the operator that such damage [resulting from an accident known to him] had been caused," we decline to follow it.

In the third assignment the defendant claims error in the following instruction of the court: "So, I charge you as a matter of law that even though this operator [the defendant] had given his name and address, if you found he did give his name and address, that is not sufficient under the statute, but you must further find that he gave his operator's license and registration number or he would be in violation of the statute." The defendant argues that the statute requires only identification so that the parties may later find and communicate with each other, and that this was sufficiently accomplished by the defendant. In support of his position the defendant cites *State* v. *Verrill,* 120 Me. 41 (1921). The statute there involved (Me. Rev. Stat. c. 26, § 38 [1916], as amended) required only that a person causing injury to person or property "[make] himself known." Our statute, § 14-224, is positive, clear, and mandatory in the specific directions it imposes upon a person coming within the scope of its operation. The defendant, who knowingly was involved in an accident which caused injury to the property and person of another, failed to stop and render such

assistance as might have been needed and to give his operator's license and registration number to the person injured or to the owner of the damaged property. The references by the defendant to annotations in 16 A.L.R. 1425, 1428, 66 A.L.R. 1228, 1230, and 101 A.L.R. 911, 916, we do not consider of assistance to us, for they apparently have no reference to a statute such as ours. *State* v. *Lanyon,* 83 Conn. 449, 451. This assignment of error is without merit. See *State* v. *Richardson,* 23 Conn. Sup. 284, 286, 1 Conn. Cir. Ct. 199, 201.

The fourth assignment requires little comment. The court stated that the operator of the Miller car went to the defendant's car and asked certain information which presumably the state claimed was relevant to the accident, to exchange licenses and registrations, "et cetera." The presumption as to what conversation took place was a misstatement of the state's claims of proof. No issue, however, is raised on the ground that this presumption might have been accepted by the jury as a correct reference to a fact. The initial error charged under this assignment is that the court exonerated the driver of the Miller car from the duty of giving his name, address, license and registration numbers as required by the statute. Whatever may have been said concerning this matter in the brief interval when the two operators faced each other is deserving only of casual notice. The significant fact is that in the state's claims of proof, contained in the finding and supported by the evidence, the defendant sped away and was pursued by the driver of the Miller car in order that this driver, Smith, might ascertain the defendant's registration number, and Smith reported all these events to the police and also complied with all the other statutory requirements during his appearance at the police station. The other error charged in the same assignment is the court's

use of the words "et cetera." These words were obviously used by way of reference to all of the evidence the jury had heard and in no way prejudiced the defendant by erroneously misdirecting the jury, in fact or in law, particularly when the charge is viewed in its entirety. See *Louisville Press Co.* v. *Tennelly,* 105 Ky. 365, 371. There was ample evidence to support the claim that the defendant sped from the scene without identifying himself as required by the law and that Smith, the other operator, pursued the defendant's car to obtain its registration number, notified the police by telephone, and later identified himself and gave the required information at the police station. The defendant gains nothing by this assignment.

The final assignment relates to the portion of the charge having reference to the three martinis the defendant testified he consumed some time before the accident. This evidence came in without objection, and it was the duty of the court to instruct the jury as to how they were to consider it. The court charged as follows: "Now, on the other hand, the defendant has taken the stand and says that after having gone to church, he stopped at this restaurant and had three martinis and there is an anomalous situation here, because if you find three martinis so stunned his senses that he didn't know that he was involved in an accident, then, of course, the other part of the statute (knowledge) would fail. But I don't believe that the defendant has made that claim. But it is for you, an element for you, to consider in the disposition of this case. Now, on the other hand, the operator of an automobile who partakes of alcoholic liquor, the State would have you draw other conclusions, but since the State didn't make any claim on that, I think the Prosecutor's words were, 'I'll leave it to your conclusion as to what you think in connection with the operator having had drinks

on the way home on this evening.' Now, the rest of the items are simply items of credibility between the defendant and the witnesses that were produced by the State."

The court's instruction on the bearing the consumption of liquor might have had on the question of knowledge that the defendant was involved in an accident was substantially correct and, in the absence of any request for a specific charge, was as favorable to the defendant as he was entitled to. The reason for the exception taken by the defendant—that this was the limit to which the jury could go—was not accurate. There was no prosecution on the charge of operating under the influence of intoxicating liquor, and no claim of such operation was made by the state; therefore, no harm to the defendant can be shown on the mere surmise that the fact of such operation entered into the jury's calculations. The court could have with propriety instructed the jury that if the drinks the defendant testified to rendered him more or less under the influence of liquor they had the right to consider it in connection with the question as to whether, at the time and place of the collision, he was in a condition to observe, remember, and later to recall and report accurately the events as they happened. This would, of course, have a bearing on the credibility to be accorded by the jury to the defendant's testimony. The casual reference to the prosecutor's statement affords us no ground for further examination, since the prosecutor's statement is not before us. While this particular portion of the charge, dealing with consumption of liquor, could have been more precise and provided more definite guidelines for the jury, it does not appear that the defendant was in any way prejudiced. The issues in controversy were clear and easily comprehended; the elements of the offense were adequately stated and analyzed; and

the jury could not have been misled by the inaccuracy claimed by the defendant. " 'An inadvertently inaccurate statement extracted from a charge by a process of critical dissection will not be regarded as reversible error unless it is reasonably probable that the jury would have been misled by it.' *McMahon* v. *Bryant Electric Co.,* 121 Conn. 397, 406 . . . ; *Amato* v. *Desenti,* 117 Conn. 612, 617 . . . ; *Ghent* v. *Stevens,* 114 Conn. 415, 419 . . . ; Maltbie, Conn. App. Proc. § 49." *Borsoi* v. *Sparico,* 141 Conn. 366, 370.

There is no error.

In this opinion JACOBS and CICALA, Js., concurred.

